SUPERIOR COURT IN THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| **VERONICA BAUGH,** 4546 Kinmount Rd. Lanham, MD 20706 | * * | |
| Plaintiff, | * | |
| v. | * | Case No. 2021 CA 003776 B |
| **UNITED STATES CAPITOL POLICE,** 119 D Street NE Washington, DC 20510 | * * * * | **JURY TRIAL DEMANDED** |
| Defendant. | * | |

## AMENDED COMPLAINT

Ms. Veronica Baugh loves life. But ever since she was accosted, harassed, arrested, and interrogated by two United States Capitol Police officers on *three separate occasions*, her life has not been the same. She suffered and continues to suffer because two Capitol Police officers found it necessary to harm her without reason and without cause. For these wrongs, Ms. Baugh brings suit against the Capitol Police and the two officers in their individual capacity.

1

**PLAINTIFF**

1. Plaintiff Veronica Baugh is a barber at House Cuts located in Washington, D.C. She is the barber of the politicians and has barbered the hair of the late Congressman John Lewis, Senator Ted Cruz, Senator Lindsay Graham, and others.

**DEFENDANTS**

2. The United States Capitol Police is a federal law enforcement agency in the District of Columbia charged with protecting the United States Congress.

3. Defendants are two unnamed Capitol Police officers working in and for the United States Capitol Police ("Defendants").

**JURISDICTION AND VENUE**

4. All the tortious events committed against Ms. Baugh took place in the District of Columbia.

**FACTS**

5. Plaintiff Veronica Baugh ("Ms. Baugh") has worked at House Cuts for 11 years.

6. On April 7, 2021, during lunch time, Ms. Baugh walked to the local café near House Cuts, to grab a bite to eat.

7. When she arrived back to the barbershop, she noticed a tall, redheaded, stout-looking Capitol Police officer, Officer X, sitting on a stool waiting to get a haircut.

8. Ms. Baugh had not seen Officer X before, but she did notice him staring at her.

9. Within seconds of walking into her shop, Officer X called out to her. His exact words were, "Hey! What's that on your arm?"

10. Ms. Baugh has an Egyptian tattoo on her right shoulder of an Ankh Cross with the Eye of Horus in the middle.

11. Officer X began questioning Ms. Baugh even further about her tattoo. "Do you know the meaning of that [tattoo]?...How long have you had it? Why did you get it?"

12. Ms. Baugh answered the officer's questions as best as she could, but Officer X was incessant and aggressive with his questioning, she could not possibly answer each and every question hurled at her.

13. After Officer X finished interrogating Ms. Baugh about her tattoo, he stood up from the barber chair and left the barbershop, but that would not be the last time she would see Officer X.

14. The very next day, April 8, 2021, Ms. Baugh was walking towards her building for work when she heard someone call out to her.

15. Ms. Baugh heard a voice yell out, "You! Come this way!" She could not see the person's face, but she thought it was an officer that she knew. The voice was instructing her to come through the loading dock area, which was a shortcut to her final destination.

16. As she approached the officer, Ms. Baugh's heart dropped—it was not the officer she knew; it was the redheaded officer from the day before, Officer X, the one who interrogated her about her tattoo.

3

17. Officer X proceeded to grab Ms. Baugh's purse from her shoulder and then began frantically searching through it as if he was searching for something of his in Ms. Baugh's purse.

18. Another officer was with Officer X who had interrogated her the day before. This officer, Officer Y, began questioning her about the same Egyptian tattoo.

19. Officer Y then said something that shook Ms. Baugh to her core—he said, "We haven't seen your kind 'round here before."

20. Ms. Baugh interpreted that "your kind" statement to be a racial statement. She began to panic.

21. Both Officer X and Officer Y made it clear to Ms. Baugh that she was not free to leave. Officer X had her purse while Officer Y questioned her.

22. After about 15 minutes of questioning and taunting by these two Capitol Police officers, Ms. Baugh was allowed to leave.

23. Ms. Baugh quickly walked away from the two male officers, physically uncontrollably shaking and in tears.

24. Ms. Baugh immediately called a friend officer who was able to help her calm her nerves. He then gave her advice on what to do.

25. Ms. Baugh could barely work that day. She barely slept that night.

26. The very next day, April 9, 2021, on her way to work, Ms. Baugh encountered Officer X again, as she came through the door at the Longworth building—a path she takes to work.

4

27. Ms. Baugh was too afraid to give eye contact, but Officer X was smiling and taunting her. She felt as though he was stalking her because she had never seen Officer X at this location.

28. The three-day encounter left Ms. Baugh extremely traumatized. To help her deal with her trauma, she sought professional help.

29. Ms. Baugh spoke with a Sergeant Hintz about the situation. He advised her that the incident was being investigated and that the video shows and proves her story.

30. Ms. Baugh quality of life is not the same and may never again be the same.

31. Ms. Baugh is currently in therapy for the trauma and emotional distress caused by the Capitol Police.

## CAUSES OF ACTION

### COUNT I:
### FALSE IMPRISONMENT

32. Plaintiff incorporates the allegations contained in the above paragraphs.

33. Officers X and Y falsely arrested Ms. Baugh when they accosted her on April 8, 2021, held her purse, and refused to allow her to leave.

34. The unlawful detention of a person without a warrant for any length of time whereby she is deprived of her personal liberty or freedom of locomotion, even by words, constitutes a false arrest. *Weishapl v. Sowers*, 771 A.2d 1014, 1020 (D.C. 2001).

5

35. On April 8, 2021, the two Capitol Police officers demanded that Ms. Baugh come into a loading dock then proceeded to remove her purse from her shoulder. While the purse was in their possession, they searched her purse.

36. Ms. Baugh was not free to leave because (1) the officers had her purse and would not return it, and (2) the officers' actions and words were enough to create a reasonable apprehension of present confinement.

37. The officers had no legal justification to arrest Ms. Baugh or search her purse.

38. The arrest caused Ms. Baugh extreme emotional stress.

39. Ms. Baugh, therefore, seeks damages in the amount of $300,000.00 in compensatory damages and $200,000.00 in punitive damages.

## COUNT II:
## INTENTIONAL INFLICTION OF EMOTIIONAL DISTRESS

40. Plaintiff realleges all statements contained in the above paragraphs.

41. Defendants are liable for Ms. Baugh's emotion distress because (1) Capitol Police as an agency and employer of Officers X and Y, is liable for the acts of its officers acting within their official capacity and (2) Officers X's and Y's actions over the course of three consecutive days were extreme, outrageous, and reckless and the direct cause of her having to go to therapy for trauma treatment.

42. To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress. *Competitive Enterprises Institute v. Mann*, 150 A.3d 1213, 1220 (D.C. 2016).

43. On April 7, 2021, Officer X questioned Ms. Baugh without any stated basis about a *tattoo* while she was at work minding her own business. Officer X does not know Ms. Baugh.

44. The next day, the 8th, Officers X and Y, in their official capacity, arrested Ms. Baugh and questioned her about her tattoo again—this time taking her purse and searching it.

45. The next day after that, the 9th, Officers X and Y, again in their official capacity and for a third time, questioned Ms. Baugh about her tattoo as though they had some stake in her arm or her tattoo.

46. Repeatedly questioning a stranger about a tattoo, then grabbing the stranger's purse, searching through the purse, and telling the stranger "we've never seen your kind 'round here" are actions that are extremely outrageous, reckless, and borderline insane, even more so when coming from uniformed, armed law enforcement officers.

47. As a result of the officers' extreme conduct, Ms. Baugh is in therapy for her severe emotional distress.

48. Since Ms. Baugh endures severe emotional distress suffered at the hands of Defendants, Defendants are liable for Ms. Baugh's actual damages and punitive damages in the amount of $500,000.00.

## COUNT III:
## INTRUSION UPON SECLUSION

49. Plaintiff adopts and realleges statements in all paragraphs above.

50. The U.S. Capitol Police is liable to Ms. Baugh for intrusion upon seclusion because (1) the agency is responsible for the acts of both officers and (2) Officers X and Y, seized Ms. Baugh's purse and proceeded to search through it without cause or permission.

51. The tort of intrusion upon seclusion has three elements: (1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight, or by use of some form of investigation or examination; (2) into a place where the plaintiff has secluded herself, or into her private or secret concerns; and (3) that would be highly offensive to an ordinary, reasonable person.

52. The police officers in this case searched through Ms. Baugh's person without cause or reason.

53. Ms. Baugh neither wanted them searching through every single item in her purse, nor did she give them permission to search though every item in her purse.

54. Ms. Baugh suffered embarrassment, fear, and trauma as a result of this intrusion upon her seclusion and seeks $300,000.00 in compensatory damages.

## COUNT IV:
## VIOLATION OF FOURTH AMENDMENT RIGHTS, 42 U.S.C. § 1983

55. Plaintiff adopts and realleges statements in all paragraphs above.

56. Defendant Officers X and Y acted in total reckless and conscious disregard for Ms. Baugh's Fourth Amendment right to be free from unreasonable seizures and arrests, giving rise to a claim under 42. U.S.C. § 1983.

57. Defendant U.S. Capitol Police failed to adequately train, supervise, and oversee its officers during the incidents that occurred on April 7–9, 2021.  Moreover, Capitol Police knew or should have known that Officers X and Y commonly harassed and wrongfully detained certain individuals, but failed to address these Fourth Amendment violations.  These failures give rise to a further claim under 42 U.S.C. § 1983.

58. On April 8, 2021, with no apparent good cause, Officers X and Y accosted, arrested, and harassed Ms. Baugh.

59. On this same date, Officers X and Y, without causes, seized and searched Ms. Baugh's purse.

60. The entire illegal stop and search is recorded on video.

61. A fellow officer heard the excitement and trauma from Ms. Baugh's voice immediately after the incident.

62. Defendant Officers' conduct was unwarranted, unjustified, and constituted an unconstitutional seizure and search.

9

63. A reasonably prudent Capitol Police officer would or should have known that this conduct was unacceptable and a direct violation of Ms. Baugh's constitutional rights.

64. Defendant U.S. Capitol Police is vicariously liable for Officers X's and Y's conduct because they both acted in their official capacity as police officers.

65. Ms. Baugh sustained injuries in the amount of $500,000.00, and therefore, U.S. Capitol is liable to Ms. Baugh for these injuries.

## COUNT V:
## NEGLIGENT HIRING, TRAINING, AND SUPERVISION

66. Plaintiff adopts and realleges statements in all paragraphs above.

67. Defendant U.S. Capitol Police is liable in negligent hiring, training, and supervision because it directly hired Officers X and Y, directly trained Officers X and Y, and directly supervised Officers X and Y, and with all this training and supervising, Officers X and Y *still* breached their duty to Ms. Baugh and their breach is the direct cause of Ms. Baugh's injuries.

68. On April 7, 8, and 9, 2021, Officers X and Y, unreasonably questioned, harassed, arrested, searched, and emotionally battered Ms. Baugh.

69. Defendant Capitol Police knew or should have known that Officers X and Y would or could commit such extremely harmful acts towards Ms. Baugh.

70. Furthermore, Capitol Police breached its duty of care to Ms. Baugh by failing to use reasonable care in providing training consistent with local and national standards.

71. Defendant Capitol Police's breach of these duties directly and proximately caused Ms. Baugh's injuries.

72. Ms. Baugh suffered and therefore, Defendant U.S. Capitol Police is liable to Ms. Baugh in the amount of $500,000.00.

## COUNT VI:
## RESPONDEAT SUPERIOR

73. Plaintiff adopts and realleges statements in all paragraphs above.

74. Capitol Police is liable for all common law torts its employees commit in the scope of their employment under the doctrine of respondeat superior. *Hechinger Co. v. Johnson*, 761 A.2d 15, 20 (D.C. 2000).

75. At all times discussed and relevant to this Complaint, Officers X and Y were employees of U.S. Capitol Police.

76. At all times discussed and relevant to this Complaint, Defendant Officers acted within the scope of their employment by U.S. Capitol Police.

77. Where any Defendant Officer is found liable to Plaintiff for Intentional Infliction of Emotional Distress and other torts, U.S. Capitol Police is also liable to the Plaintiff under the doctrine of respondeat superior for those injuries.

78. Therefore, Defendants are jointly and severally liable to Ms. Baugh for all compensatory damages, punitive damages, and actual damages recoverable under D.C. Code § 16-2701, D.C. Code § 12-101, and the common law of the District of Columbia totaling $3,300,000.00.

**WHEREFORE**, Ms. Baugh requests that this honorable Court:

(a) Enter judgment holding the appropriate Defendants jointly and severally liable to Ms. Baugh for all compensatory damages, punitive damages, and actual damages recoverable under D.C. Code § 16-2701, D.C. Code § 12-101, and the common law of the District of Columbia totaling $3,300,000.00;

(b) Award Ms. Baugh her costs and reasonable attorney's fees;

(c) Grant such other and further relief as the Court deems just and proper.

**Respectfully Submitted July 12, 2021**

REMUS ENTENTERPRISES LAW GROUP

*/s/ Solon Phillips*
Solon Phillips, Esq.
DC Bar No. 1602416
solon@remuslaw.com

Mailing Address
4801 Bartletts Vision Drive
Bowie, MD 20720
Mailing Address
202-329-1799
